AMANDA ARNOLD SANSONE, United States Magistrate Judge
Miami-Dade County moves to amend or alter judgment entered in Nadia Rodriguez's favor on her retaliation claim following the jury's verdict. (Doc. 144). Ms. Rodriguez opposes Miami-Dade County's motion. (Doc. 151). She also moves for additur, to amend or alter judgment on the jury's findings on damages on her retaliation claim, and, alternatively, for a new trial on damages. (Doc. 145).
Entering judgment in Ms. Rodriguez's favor on her retaliation claim (Count II) constituted manifest error of law. Therefore, Miami-Dade County's motion to amend or alter judgment is GRANTED .
An additur of nominal damages on Ms. Rodriguez's retaliation claim is inappropriate. The jury's verdict on her retaliation claim (Count II) constituted no manifest error of law or fact. And the great weight of evidence supports the jury's decision on Ms. Rodriguez's retaliation claim. Therefore, Ms. Rodriguez's motions for additur, to amend or alter judgment, or for a new trial on damages are DENIED .
I. BACKGROUND
Ms. Rodriguez sued Miami-Dade County for violations under Title VII. (Doc. 1). After Ms. Rodriguez, initially proceeding pro se, failed to properly serve Miami-Dade County, the court granted Miami-Dade County's motion to quash and ordered Ms. Rodriguez to submit an amended complaint, which she did. (Docs. 13, 15). Ms. Rodriguez later obtained counsel and submitted her second amended complaint. (Doc. 42).
In her second amended complaint, Ms. Rodriguez alleged three Title VII violations by Miami-Dade County: discrimination based on her national origin; retaliation against her for opposing unlawful employment practices; and hostile work environment. (Doc. 42). Ms. Rodriguez also claimed Miami-Dade County violated the False Claims Act (Id. ). After the ruling on Miami-Dade County's motion for summary judgment, only Ms. Rodriguez's national origin discrimination and retaliation claims remained. (Doc. 80).
*1283 Ms. Rodriguez worked as an assistant site manager and in the centralized maintenance crew section at Miami-Dade County's office for Public Housing Community Development. (Doc. 101, p. 2). Leshia Elie was Ms. Rodriguez's supervisor at Miami-Dade County. (Id. ). Ms. Elie allegedly discriminated against Ms. Rodriguez based on her national origin, which led Ms. Rodriguez to file a complaint with Miami-Dade County's Office for Fair Employment. (Doc. 101, p. 1).
Ms. Rodriguez claimed Ms. Elie retaliated against her for filing a complaint with Miami-Dade County's Office for Fair Employment. (Id. at 1-2). Specifically, Ms. Rodriguez claimed that, during an April 10, 2013 telephonic hearing with a referee about Ms. Rodriguez's application for unemployment benefits, Ms. Elie called Ms. Rodriguez seventeen times to disrupt Ms. Rodriguez's testimony. (Doc. 101, pp. 2-3).
The case proceeded to a four-day jury trial. On the first interrogatory of the verdict from for the national origin discrimination claim, the jury answered "no" on whether the jury found, from a preponderance of the evidence, that Ms. Rodriguez's national origin was a motivating factor in Miami-Dade County's decision to discharge her. (Doc. 136). That answer required no further answers from the jury on that verdict form; therefore, the court directed the Clerk to enter judgment in Miami-Dade County's favor on the national origin discrimination claim (Count I). (Doc. 138).
On the verdict form for Ms. Rodriguez's retaliation claim, the jury answered in the following way:
TITLE VII RETALIATION
Do you find from a preponderance of the evidence:
1. That Nadia Rodriguez engaged in protected activity?
Answer Yes or NO: YES
If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.
2. That Miami-Dade County, through Leshia Elie, took adverse employment action against Nadia Rodriguez on April 10, 2013?
Answer Yes or No: YES
If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.
3. That Miami-Dade County, through Leshia Elie, took the adverse employment action because of Nadia Rodriguez's protected activity?
Answer Yes or No: YES
If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.
4. That Nadia Rodriguez suffered damages because of the adverse employment action on April 10, 2013?
Answer Yes or No: NO
If your answer is "Yes," in what amount? $ ___________
If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form. If your answer is "Yes," go to the next question.
5. That Nadia Rodriguez should be awarded damages to compensate for emotional pain and mental anguish resulting from the adverse employment action on April 10, 2013?
Answer Yes or No: NO
*1284 If your answer is "Yes," in what amount? $ ___________
(Doc. 137).
Based on these answers from the jury, the court directed the Clerk to enter judgment in Ms. Rodriguez's favor on the retaliation claim (Count II). (Doc. 139).
Miami-Dade County moves to amend or alter judgment on the retaliation claim. (Doc. 144). Ms. Rodriguez opposes Miami-Dade County's motion and instead requests relief that includes requests for additur, to amend of alter the judgment on her retaliation claim, and, alternatively, for a new trial on damages. (Docs. 145, 151, 157). The court will address each side's contentions, beginning with Miami-Dade County's motion.
II. ANALYSIS
A. Miami-Dade County's Motion to Amend or Alter Judgment
Miami-Dade County argues the judgment on Ms. Rodriguez's retaliation claim reflects manifest error of law and fact. (Doc. 144, p. 1). According to Miami-Dade County, the jury did not find in Ms. Rodriguez's favor on her retaliation claim. (Id. ). Miami-Dade County argues that, consistent with the Eleventh Circuit's pattern jury instruction given to the jury, Ms. Rodriguez had to prove she suffered damages to prevail on her retaliation claim. (Id. at 1-2). Miami-Dade County points out no dispute existed between the parties on the elements needed to prove retaliation, including damages. (Doc. 144, p. 2). Because the jury answered "no" on whether Ms. Rodriguez suffered damages because of Miami-Dade County's adverse employment action, Miami-Dade County concludes that judgment on the retaliation claim should be amended in its favor. (Id. at 2-3).
Ms. Rodriguez argues that a Title VII plaintiff need not suffer "financially quantifiable damages" to prevail on a retaliation claim. (Doc. 151, p. 2). Instead, Ms. Rodriguez argues a plaintiff need only prove a "materially adverse action" by the employer. (Id. at 2-3). According to Ms. Rodriguez, she presented sufficient evidence at trial of Ms. Elie's interference with Ms. Rodriguez's unemployment compensation hearing, which constitutes the "materially adverse action" needed to succeed on her retaliation claim. (Id. at 3-4). Therefore, Ms. Rodriguez concludes that the court should deny Miami-Dade County's motion to amend or alter judgment on the retaliation claim. (Id. at 4-5).
Federal Rule of Civil Procedure 59(e) allows the court to alter or amend a judgment. Fed. R. Civ. P. 59(e). The only grounds for altering or amending judgment are newly-discovered evidence and manifest errors of law or fact. Arthur v. King , 500 F.3d 1335, 1343 (11th Cir. 2007) ; In re Kellogg , 197 F.3d 1116, 1119 (11th Cir. 1999).
The court's jury instructions on Ms. Rodriguez's retaliation claim stated the following:
To succeed on her claim, Ms. Rodriguez must prove each of the following facts by a preponderance of the evidence:
First: Ms. Rodriguez engaged in protected activity;
Second: Miami-Dade County, through Ms. Elie, then took an adverse employment action;
Third: Miami-Dade County took the adverse employment action because of Ms. Rodriguez's protected activity; and
Fourth: Ms. Rodriguez suffered damages because of the adverse employment action.
(Doc. 135, p. 13) (emphasis added).
The court based its jury instructions on Ms. Rodriguez's retaliation claim on the Eleventh Circuit's Pattern Jury Instructions.
*1285 11th Cir. Pattern Jury Instr. Civ . 4.22 (2013). Although some differences existed between Ms. Rodriguez's proposed jury instruction on her retaliation claim and Miami-Dade County's proposed jury instruction, both parties included the language stating that Ms. Rodriguez had to prove each of the four elements to succeed on her retaliation claim. (Doc. 116, pp. 28-36).
The jury answered "no" on whether Ms. Rodriguez proved by a preponderance of the evidence that she suffered damages because of Miami-Dade County's adverse employment action. (Doc. 137, p. 2). Because Ms. Rodriguez needed to prove she suffered damages because of Miami-Dade County's adverse employment action, and she failed to do so, entering judgment in her favor on the retaliation claim (Count II) was a manifest error of law.
To support her claim that the court properly entered judgment in her favor on her retaliation claim, Ms. Rodriguez primarily relies on two cases, but neither held that damages are unnecessary to succeed on a retaliation claim. See Burlington N. & Santa Fe Ry. Co. v. White , 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (holding that an employer's actions must dissuade a reasonable worker from making or supporting a discrimination claim to constitute retaliation); see also Crawford v. Carroll , 529 F.3d 961 (11th Cir. 2008) (holding that an unfavorable performance review that prevented an employee from receiving a merit pay increase constituted adverse employment action for a retaliation claim).[1] Therefore, Miami-Dade County's motion to amend or alter judgment on the retaliation claim (Count II) in its favor is granted.
B. Ms. Rodriguez's Motions
Ms. Rodriguez's motion includes three requests for relief. (Doc. 145).[2] The court will discuss each in turn.
1. Motion for Additur
Ms. Rodriguez argues she presented sufficient evidence of emotional distress and mental anguish damages she suffered because of Ms. Elie's retaliation at trial, evidence Ms. Rodriguez claims Miami-Dade *1286 County failed to dispute. (Id. at 2). She specifically refers to her own testimony and her nurse practitioner Don Davis's testimony about her emotional distress. (Id. ). Ms. Rodriguez claims the jury ignored this "uncontroverted evidence" about her emotional distress and mental damages. (Id. ). Therefore, Ms. Rodriguez requests an additur of at least nominal damages. (Id. at 2-5).
Additurs, or an increase in the amount of damages a jury awarded, are unconstitutional. Dimick v. Schiedt , 293 U.S. 474, 482, 55 S.Ct. 296, 79 L.Ed. 603 (1935) ;[3] Hattaway v. McMillian , 903 F.2d 1440, 1450-51 (11th Cir. 1990). An exception exists when a jury finds the underlying liability and no genuine issue exists on the correct amount of damages. EEOC v. Massey Yardley Chrysler Plymouth, Inc. , 117 F.3d 1244, 1252-53 (11th Cir. 1997) (citations omitted). A plaintiff is entitled to nominal damages for constitutional violations even without showing actual injury. Carey v. Piphus , 435 U.S. 247, 266-67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Nominal damages are not required, however, in cases that involve statutory violations, like Title VII. Walker v. Anderson Elec. Connectors , 944 F.2d 841, 845 (11th Cir. 1991) (footnote omitted).
An additur of nominal damages in Ms. Rodriguez's favor is inappropriate here. Under the jury instructions and verdict form, to succeed on the underlying liability for her retaliation claim, Ms. Rodriguez had to prove by a preponderance of the evidence she suffered damages because of Miami-Dade County's adverse employment action. (Doc. 135, p. 13; Doc. 137, p. 2). Because she failed to do so, the jury did not find on the underlying liability for her retaliation claim. Therefore, Ms. Rodriguez is not entitled to an additur of nominal damages on her retaliation claim.
Walker controls the decision in this case. In Walker , an employee sued Anderson Electrical under Title VII for sexual harassment. 944 F.2d at 842-43. The jury found Anderson Electrical committed sexual harassment against the employee, but also found the employee suffered no monetary damage. Id. at 843. The district court later denied the employee's request for nominal damages on her sexual harassment claim. Id. at 845. On appeal, the Eleventh Circuit, consistent with the prohibition on additurs under the Seventh Amendment, held that additurs of nominal damages were not required even if the jury finds the defendant commits the predicate acts of a statutory right violation. Id. (citations omitted).[4]
Like the jury that found Anderson Electrical sexually harassed the employee in Walker , the jury here found Miami-Dade County took adverse employment against Ms. Rodriguez because of her protected activity. And like the jury that still found the employee in Walker suffered no monetary damage from her sexual harassment, the jury here found Ms. Rodriguez suffered no damages because of Miami-Dade *1287 County's adverse employment action. Therefore, just like the district court-affirmed by the Eleventh Circuit-found nominal damages inappropriate in Walker , nominal damages are inappropriate here.
Two cases Ms. Rodriguez cited require distinction: Hendrix v. Sterilite Corp. , 742 F.Supp.2d 1277 (N.D. Ala. 2010) and Carver Middle School Gay-Straight Alliance v. School Board of Lake County , 249 F.Supp.3d 1286 (M.D. Fla. 2017). In Hendrix , an employee sued Sterilite under Title VII and 42 U.S.C. Section 1981 for a racially hostile work environment. 742 F.Supp.2d at 1278. The jury found the employee suffered damages because of a hostile work environment but awarded no damages. Id. at 1278-79. After finding Walker distinguishable, the court awarded nominal damages because it was "the only way to 'make sense' " of the jury's verdict that the employee suffered damages but awarded none. Id. at 1282-84.
Unlike the jury in Hendrix , the jury here found that Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action. Therefore, nominal damages are unnecessary to "make sense" of the jury's verdict.
In Carver , the plaintiffs sued the local school board for their middle school's alleged violation of the Equal Access Act and for a First Amendment violation. 249 F.Supp.3d at 1288. The plaintiffs included an organization that sought recognition as an official school club at Carver Middle School. Carver , 249 F.Supp.3d at 1288. The court held a bench trial and had to later determine whether the plaintiffs were entitled to nominal damages for the school's failure to recognize the organization as an official school club. Id. at 1289. The school board argued that, under Walker , nominal damages were inappropriate for violations of the Equal Access Act because those constitute statutory violations. Id. at 1291 (citations omitted). The court disagreed and concluded that, although Walker held that nominal damages were not "required" for statutory violations, nothing "prohibited" nominal damages for statutory violations. Id. Given the facts, the court in Carver found nominal damages appropriate. Id. at 1294.
Unlike the court in Carver , which held a bench trial, the trial here was a jury trial. The prohibition on additurs comes into play when a jury is the finder of fact, because the Seventh Amendment protects against intrusion on the jury's domain. Walker , 944 F.2d at 845. Therefore, Carver is materially distinguishable due the court being the finder of fact in that case versus the jury being the finder of fact in the instant case.
Even if nominal damages were appropriate, Ms. Rodriguez waived her claim for nominal damages. "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c). A party's failure to request a charge on nominal damages, and failure to object to a court's verdict form that does not include interrogatories on nominal damages, precludes that party from later requesting nominal damages. Walker , 944 F.2d at 845 ; see also Barker v. Emory Univ. , No. 1:02-CV-2450-CC, 2007 WL 9698027, at *1-2 (N.D. Ga. Sept. 27, 2007) (determining that a plaintiff who requested nominal damages waived that argument because she failed to include interrogatories on nominal damages in her proposed jury instructions and verdict form and she failed to object to the court's verdict form that did not include interrogatories on nominal damages).
Here, Ms. Rodriguez proposed no jury instruction or verdict form that included any reference to nominal damages. (Docs.
*1288 116, 117). Nor did Ms. Rodriguez object to the court's jury instruction or verdict forms that did not include interrogatories on nominal damages. Therefore, Ms. Rodriguez waived any claim to nominal damages.[5]
2. Motion to Amend or Alter Judgment
Ms. Rodriguez alternatively moves to amend or alter judgment on her retaliation claim under Rule 59(e). (Doc. 145, pp. 5-6). According to Ms. Rodriguez, the court should amend the jury's verdict on her retaliation claim, in which the jury determined Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action, because Ms. Rodriguez presented "uncontroverted evidence" of emotional distress and mental damages at trial. (Id. at 6).
Rule 59(e) allows the court to amend a judgment entered according to a jury verdict when newly-discovered evidence exists or to correct manifest error of law or fact. Arthur , 500 F.3d at 1343 ; Liese v. Delio , No. 6:14-CV-1788-Orl-40DAB, 2016 WL 7325649, at *2 (M.D. Fla. May 26, 2016) (citations omitted). An order amending or altering judgment entered according to a jury verdict is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Wendy's Int'l., Inc. v. Nu-Cape Const. Inc., 169 F.R.D. 680, 685 (M.D. Fla. 1996) (citation omitted). The party requesting relief under Rule 59(e) must demonstrate strongly convincing reasons to reverse the judgment entered according to a jury verdict. Liese , 2016 WL 7325649, at *2 ; Leonard v. Astrue , 487 F.Supp.2d 1333, 1341 (Mar. 30, 2007) (quotations and citations omitted).
Ms. Rodriguez failed to demonstrate newly-discovered evidence exists or that amendment is necessary to correct manifest error of law or fact. The court based the interrogatories and verdict forms on the Eleventh Circuit Pattern Jury Instructions. (Doc. 135, 137); 11th Cir. Pattern Jury Instr. Civ . 4.22. Further, Walker affirmed a jury's determination that a plaintiff suffered sexual harassment but incurred no monetary damage. 944 F.2d at 845. Therefore, the jury's determination here that Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action is not manifest error of law.
To determine whether judgment entered according to a jury verdict constitutes manifest error of fact under Rule 59(e), the court reviews the trial record like it does for motions for new trial under Rule 59(a). See Mahshie v. Infinity Ins. Co. , No. 12-20148-CIV-OTAZO-REYES, 2013 WL 12085507, at *4 (S.D. Fla. Oct. 2, 2013) (relying on analysis for a Rule 59(a) motion for new trial in its analysis for a Rule 59(e) motion to amend or alter judgment).
Ms. Rodriguez based her retaliation claim against Miami-Dade County on Ms. Elie's actions against Ms. Rodriguez after Ms. Rodriguez reported Ms. Elie's alleged national origin discrimination. (Doc. 42, pp. 15-18). Specifically, Ms. Rodriguez filed a complaint with Miami-Dade County's Office of Fair Employment claiming national *1289 origin discrimination. (Doc. 95, p. 1). Ms. Rodriguez claimed Ms. Elie retaliated against her one month later when she called Ms. Rodriguez's phone seventeen times to disturb Ms. Rodriguez's testimony during her unemployment compensation hearing on April 10, 2013. (Doc. 95, pp. 1-2).
The jury found Ms. Rodriguez engaged in protected activity when she filed her national origin discrimination claim. (Doc. 135, p. 13; Doc. 137, p. 1). The jury also found Miami-Dade County, through Ms. Elie, took an adverse employment action against Ms. Rodriguez when Ms. Elie called Ms. Rodriguez repeatedly during her unemployment compensation hearing on April 10, 2013. (Doc. 135, p. 14; Doc. 137, p. 1). The jury determined Miami-Dade County, through Ms. Elie, took that adverse employment action because of Ms. Rodriguez's protected activity. (Doc. 135, p. 15-16; Doc. 137, p. 2). But the jury found Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action. (Doc. 135, p. 16; 137, p. 2).
Ms. Rodriguez argues the court should amend judgment with respect to the jury's findings on the damages she suffered because of Miami-Dade County's adverse employment action. (Doc. 145, pp. 5-6). Therefore, the court must determine whether the jury's findings on Ms. Rodriguez's damages constitute manifest error of fact.[6]
At trial, Ms. Rodriguez introduced the testimony of nurse practitioner Don Davis, who specializes in psychiatric treatment. Mr. Davis, without his medical notes, testified the first time he treated Ms. Rodriguez was in October 2017. Mr. Davis testified that Ms. Rodriguez was on medications, including Klonopin (anti-anxiety medication) and Trazodone (an antidepressant), before she came to Mr. Davis. During Ms. Rodriguez's first visit with Mr. Davis, he performed a psychiatric evaluation. Mr. Davis stated that he remembered Ms. Rodriguez saw another clinician in 2013, but he could not recall other details about any prior treatment Ms. Rodriguez received. After the psychiatric evaluation, he recommended Ms. Rodriguez return for ongoing treatment and continued her on four medications, including Trazodone and Klonopin.
Mr. Davis testified that he has treated Ms. Rodriguez three times, strictly for medication management, since her initial visit in October 2017. He remembered diagnosing Ms. Rodriguez with major depressive disorder. Mr. Davis had no opinion with respect to whether he expects Ms. Rodriguez's treatment, including her medications, must continue in the future. Mr. Davis recalled that Ms. Rodriguez's condition improved, and she required no medication changes.
Ms. Rodriguez also testified about Ms. Elie's calls during the unemployment compensation hearing and her claimed damages. Ms. Rodriguez testified that Ms. Elie's calls disrupted her ability to testify at the unemployment compensation hearing, but she did not testify that the phone calls prevented her from receiving unemployment benefits. She testified Ms. Elie never called her again after the unemployment compensation hearing.
Ms. Rodriguez testified that she first sought treatment from a mental health professional in October 2014. She testified that she was hospitalized in October 2014 for four days because she stopped eating and sleeping. Ms. Rodriguez testified that she could not work for two or three years after her hospitalization. She testified she is still on medication, but she never medicated *1290 before her hospitalization in October 2014. She testified she still suffers from depression. Ms. Rodriguez testified she had to withdraw over $10,000 from her son's prepaid college tuition account to pay for living expenses. She testified she currently has difficulties making payments on her home.
The jury's finding that Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action despite the evidence Ms. Rodriguez presented at trial is not manifest error of fact. Mr. Davis testified Ms. Rodriguez first visited him for treatment in October 2017-more than four years after Ms. Elie called Ms. Rodriguez seventeen times during her unemployment compensation hearing. Mr. Davis, without his treatment notes, recalled that Ms. Rodriguez previously received treatment from another clinician in 2013. But whether Ms. Rodriguez's previous treatment was before or after Ms. Elie's seventeen phone calls is uncertain from Mr. Davis's testimony. Further, Ms. Rodriguez introduced no medical records or bills from her mental health treatment into evidence.
Ms. Rodriguez testified she first sought mental health treatment and was hospitalized in October 2014-more than one year after Ms. Elie's seventeen phone calls. Although she testified about employment and financial problems, she did not claim those problems resulted from Ms. Elie's seventeen phone calls (as opposed to resulting from Ms. Elie's alleged national origin discrimination). Nor did Ms. Rodriguez provide other opinions, medical or otherwise, about the extent of her mental damages after Ms. Elie's seventeen phone calls.
Credibility determinations are for the jury to decide. Brown v. Ford Motor Co. , 479 F.2d 521, 522-23 (5th Cir. 1973).[7] The jury could choose to discredit Ms. Rodriguez's claims about damages she suffered after her employment with Miami-Dade County and Ms. Elie's seventeen phone calls. Therefore, considering Ms. Rodriguez's testimony, the jury's finding that Ms. Rodriguez suffered no damages because of Ms. Elie's seventeen phone calls during her unemployment compensation hearing is not manifest error of fact.
Considering Mr. Davis's and Ms. Rodriguez's testimony together still supports the jury's findings. Notably, Ms. Rodriguez's testimony failed to establish she suffered mental damages because of Ms. Elie's seventeen phone calls. Therefore, the jury's findings on Ms. Rodriguez's retaliation claim contains no manifest error of law or fact and Ms. Rodriguez's motion to amend or alter judgment under Rule 59(e) is denied.
3. Motion for New Trial on Damages
Ms. Rodriguez alternatively moves for a new trial on damages under Rule 59(a). (Doc. 145, pp. 7-8). Ms. Rodriguez argues the court should grant a new trial on damages based on "the undisputed evidence of emotional distress/mental anguish damages at bar." (Id. at 8).
The court may grant a new trial on all or some issues "after a jury trial, for any reason which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A court may grant a motion for new trial if the court believes the jury's verdict was contrary to the great weight of evidence. Williams v. City of Valdosta , 689 F.2d 964, 973 (11th Cir. 1982). The court should independently weight the evidence, considering evidence favorable to the jury verdict and evidence favorable to the moving party. Id. (citation omitted). The court *1291 should not substitute its credibility choices and inferences for the jury's credibility choices and inferences. Id. at 973, n.7.
In reviewing whether evidence supports the jury's verdict, the court considers evidence and all reasonable inferences in the light most favorable to the prevailing party. Overseas Private Inv. Corp. v. Metro. Dade Cty. , 47 F.3d 1111, 1113 (11th Cir. 1995) (citation omitted). The court may overturn the jury's verdict only if facts and inferences "point so strongly and overwhelmingly" in favor of one party that reasonable jurors could not arrive at a contrary verdict. Id. (quotation and citation omitted).
As previously discussed with respect to Ms. Rodriguez's motion to amend judgment under Rule 59(e), Mr. Davis's and Ms. Rodriguez's testimony about Ms. Rodriguez's medical issues after Ms. Elie's seventeen phone calls fail to "point so strongly and overwhelmingly" in Ms. Rodriguez's favor that jurors could not reasonably find she suffered no damages. Therefore, Ms. Rodriguez's motion for new trial on damages under Rule 59(a) is denied.[8]
III. CONCLUSION
Entering judgment in Ms. Rodriguez's favor on her retaliation claim (Count II) constituted manifest error of law because Ms. Rodriguez failed to prove by a preponderance of the evidence she suffered damages because of Miami-Dade County's retaliation. Therefore, Miami-Dade County's motion to amend or alter judgment (Doc. 144) is GRANTED .
Ms. Rodriguez is not entitled to an additur of nominal damages because the jury found that Ms. Rodriguez failed to prove the elements for the underlying liability for retaliation. The jury verdict finding Ms. Rodriguez suffered no damages because of Miami-Dade County's adverse employment action constitutes no manifest error of law or fact. Last, Ms. Rodriguez failed to demonstrate that the jury verdict was against the great weight of evidence requiring a new trial on damages. Therefore, Ms. Rodriguez's motions for additur, to amend or alter judgment, and new trial on damages (Doc. 145) are DENIED .
The Clerk is DIRECTED to enter an amended judgment on Ms. Rodriguez's retaliation claim (Count II). The amended judgment should state that "Judgment is in favor of the Defendant as to Count II of the Second Amended Complaint."
ORDERED in Tampa, Florida on September 24, 2018.

Ms. Rodriguez also cited Eleventh Circuit cases in a footnote, but those cases are also inapplicable. See Collins v. Marriott Int'l, Inc. , 749 F.3d 951 (11th Cir. 2014) (analyzing a jury award of zero dollars in the context of a compromise verdict in a negligence action); see also Reider v. Philip Morris USA, Inc. , 793 F.3d 1254 (11th Cir. 2015) (holding that a party's post-trial claim of an inconsistent jury verdict fails to preserve a claim of an unlawful jury compromise).

In her reply, Ms. Rodriguez suggests she has a claim remaining under 42 U.S.C. Sections 1981 and 1983 because her second amended complaint stated that her lawsuit was an action "to make whole Rodriguez for exercising her federally protected rights under 42 U.S.C. § 1983" and nothing occurred since her second amended complaint to indicate she abandoned those claims. (Doc. 42, p. 1; Doc. 157, p. 2). Consistent with Local Rule 3.06(e), the court stated that the parties' amended pretrial statement would control the course of trial. (Doc. 99, p. 1). In the amended joint pretrial statement, Ms. Rodriguez only included her claims under Title VII. (Doc. 101). Further, neither Ms. Rodriguez's proposed jury instruction and verdict forms, nor the court's jury instructions and verdict forms included interrogatories or verdicts on Section 1981 or 1983 claims. (Docs. 116, 135). Failure to object to verdict forms and interrogatories before the courts submits its verdict forms and interrogatories to the jury constitutes waiver of that issue. See Fredonia Broad. Corp. v. RCA Corp. , 481 F.2d 781, 796 n.10 (5th Cir. 1973) (citations omitted) (noting that the waiver rule for special verdict forms also applies to general verdict forms). Therefore, Ms. Rodriguez waived any Section 1981 or 1983 claim she had because she failed to include those claims in the joint pretrial statement and she failed to object to the court's interrogatories and verdict forms.

Dimick holds that additurs violate the Seventh Amendment. 293 U.S. at 482, 55 S.Ct. 296. The Seventh Amendment states the following:
In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law.
U.S. Const. amend. VII.

See also Salvatori v. Westinghouse , 190 F.3d 1244, 1244-45 (11th Cir. 1999) (holding that plaintiff, who the jury found proved the predicate acts of age discrimination but was not entitled to damages, was not the prevailing party); Buckner v. Franco, Inc. , 178 F.3d 1293 (6th Cir. 1999) (unpublished) (affirming jury verdict that found plaintiff was sexually harassed but awarded no damages).

Ms. Rodriguez also argues an additur is appropriate under Section 768.74, Florida Statutes, which permits courts to order additurs in negligence actions under Florida law. (Doc. 145, pp. 4-5). Ms. Rodriguez cited no authority to support her argument that Section 768.74 applies in employment actions based on federal statutes. Federal law applies in cases arising from federal statutes. Erie R. Co. v. Tompkins , 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ; see also Myers v. Cent. Fla. Inv. , 592 F.3d 1201, 1212 (11th Cir. 2010) (applying Section 768.74 to compensatory awards on state law claims). Therefore, Ms. Rodriguez's attempt to apply state law on additurs to her federal claims is unavailing.

In its review of the record, the court reviewed a rough transcript of the trial.

The former Fifth Circuit's decisions are binding precedent. Bonner v. City of Prichard , 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

To the extent she argues the jury's verdict is inconsistent on her retaliation claim, Ms. Rodriguez waived that argument. A party must object to an inconsistent verdict before the court dismisses the jury. Reider , 793 F.3d at 1259 (citation omitted). A party's failure to object to an inconsistent verdict before the court dismisses the jury constitutes waiver of that objection. Id. (citation omitted). Ms. Rodriguez failed to object to the jury's verdict on her retaliation claim as inconsistent before the court dismissed the jury; therefore, Ms. Rodriguez's waived any argument that the jury's verdict on her retaliation claim is inconsistent.